Filed 6/18/24  P. v. Thompson CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSEPH ARTHUR THOMPSON,<br><br>    Defendant and Appellant. | D081996<br><br><br>(Super. Ct. No. SCD296361) |

APPEAL from a judgment of the Superior Court of San Diego County, Eugenia A. Eyherabide, Judge.  Affirmed.

Britton Donaldson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric Swenson and Elana Miller, Deputy Attorneys General, for Plaintiff and Respondent.

MEMORANDUM OPINION[1]

Wearing "extra big" dark sunglasses on a cloudy October morning, Joseph Arthur Thompson walked into a bank, wrote a note, and passed it to a bank teller. The note read, "This is a robbery." Shocked, the teller activated the silent alarm. Within minutes, the police responded and had Thompson under arrest. He admitted he passed the note because he needed money and he wanted "[w]hatever he could get" from the bank. A jury convicted him of attempted robbery (Pen. Code, §§ 664 & 211) and the trial court sentenced him to a three-year prison term.[2] He appeals, asserting there was insufficient evidence he used fear in his attempt to take the bank's money. We affirm.

Attempted robbery requires a specific intent to commit robbery and a direct but ineffectual act toward commission of the crime. (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 488–489.) Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, against his will, accomplished by means of force or fear. (*Id.* at p. 489.) To establish a robbery was committed by means of fear, the prosecution must present evidence the victim was in fact afraid, and that such fear allowed the crime to be accomplished. (*People v. Morehead* (2011) 191 Cal.App.4th 765, 774 (*Morehead*).)

---

[1] This case is appropriate for resolution by memorandum opinion because it raises "no substantial issues of law or fact." (Cal. Stds. Jud. Admin., § 8.1; see *People v. Garcia* (2002) 97 Cal.App.4th 847.)

[2] The trial court dismissed Thompson's prior strike conviction pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, dismissed his prior serious felony conviction, and found true aggravating factors to impose the upper term of three years for the attempted robbery.

The element of fear for purposes of robbery is established when there is sufficient fear to cause the victim to comply with the unlawful demand for his property. (*Morehead*, *supra*, 191 Cal.App.4th at p. 774.) Direct proof of fear is not required because "fear may be inferred from the circumstances in which the property is taken." (*Id.* at p. 775.) "If there is evidence from which fear may be inferred, the victim need not explicitly testify that he or she was afraid." (*Ibid.*) The requisite fear does not need to be the result of an express threat or the use of a weapon; it does not need to be "extreme" to constitute robbery; nor does it require resistance by the victim. (*Ibid.*) "All that is necessary is that the record show conduct, words, or circumstances reasonably calculated to produce fear." (*Ibid.* [cleaned up].) "Intimidation of the victim equates with fear." (*Ibid.*) Relevant here, "[a]n unlawful demand can convey an implied threat of harm for failure to comply, thus supporting an inference of the requisite fear." (*Ibid.*)

In *Morehead*, the defendant—donning sunglasses and/or a beanie to thwart his identification—entered four different banks and, each time, passed a note to a bank teller demanding money. (*Morehead*, *supra*, 191 Cal.App.4th at pp. 768–769, 776.) At the first bank, his note read, " 'Robbery 100s/50s.' " (*Id.* at pp. 768–769.) The teller " 'panicked,' " and when she told nearby employees she was being robbed, the defendant walked away. (*Id.* at p. 769.) At the second bank, the defendant's note read, " 'This is a robbery.' " (*Ibid.*) The teller was scared and gave him $1,600. (*Ibid.*) At the third, the defendant obtained money after showing the teller a note demanding money. (*Ibid.*) At the fourth, the defendant's note read, " 'Robbery, no dye packs, second drawer.' " (*Ibid.*) The teller, scared, gave him just over $400. (*Ibid.*) A jury convicted the defendant of one count of attempted robbery and three

3

counts of second degree robbery, among other unrelated charges. (*Id.* at p. 768.) His convictions were affirmed by this court. (*Id.* at p. 778.)

In affirming, we rejected the defendant's claim that "any actual, subjective fear on the part of the tellers was not objectively reasonable under the circumstances because he 'never threatened anyone, and never showed a weapon,' and thus he 'did nothing other than hand the teller[s] a piece of paper requesting money.' " (*Morehead*, *supra*, 191 Cal.App.4th at p. 777.) We concluded substantial evidence supported the jury's finding that each of the robbery victims either complied or, in the case of the attempted robbery, would have complied had the defendant not walked away when the teller sought assistance "as a result of actual and reasonable fear that arose from the implicit threat of harm contained in his demands." (*Id.* at p. 775.) We found each victim's testimony that she was " 'panicked' " (*id.* at p. 769) or "scared and nervous" (*ibid.*) because of the defendant's demand for money "reflected a perception that she had no choice but to comply with his demand" (*id.* at p. 778). "Any reasonable jury would conclude the tellers had no way of knowing what Morehead might do if they failed to comply, and their prompt compliance showed they viewed Morehead's demands as carrying an implicit threat he might harm them if they did not immediately hand money over to him." (*Ibid.*)

We reach the same conclusion here.

R.G., C.M. and M.N. were all behind the "bandit barrier"[3] when Thompson approached the tellers and slid his robbery note to R.G. R.G. was "shocked" and "nervous" but he kept calm, turned to C.M. and told her to call

---

[3] This is the bulletproof glass half-wall that separates the bank tellers from the customers.

911.  He took Thompson "seriously" because he "needed to protect the branch, the customers, and the employees."  So he immediately stepped back and pressed the silent alarm to summon the police.  After R.G. told her to call 911 because they were getting robbed, C.M. "panick[ed] and felt "nervous" Thompson would "retaliate" because she thought they were taking too long to give in to his demands.  M.N., who was in the middle of handing $8,000 in cash to a customer when Thompson passed the robbery note to R.G., "panicked," was "fearful" and in "shock" when she became aware of the robbery in process.  She also called the bank's Security Response Center.

As in *Morehead*, we conclude the People presented ample evidence the victims felt "actual and reasonable fear . . . from the implicit threat of harm contained in [Thompson's] demands."  (*Morehead*, *supra*, 191 Cal.App.4th at p. 775.)  Thompson argues *Morehead* is distinguishable because unlike the defendant who walked up to the teller's window, "here [Thompson] is an elderly man who had to use the assistance of a cane to reach the teller's window."  This is an immaterial difference.  Thompson's remaining argument that "one could interpret" C.M.'s and M.N.'s "panic and fear" was caused not by his actions but from R.G.'s "loud" announcement he was being robbed is similarly unpersuasive.  It overlooks the governing standard of review.  If the circumstances reasonably justify the jury's findings, we do not reverse simply because the circumstances might also reasonably be reconciled with a contrary finding. (See *People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)  Viewing the evidence in the light most favorable to the prosecution, a jury could reasonably conclude Thompson's unlawful demand conveyed to the victims an implied threat of harm for failure to comply, supporting an inference of the requisite fear to sustain a conviction for attempted robbery.  (*Ibid.*)

5

## DISPOSITION

The judgment is affirmed.

DO, Acting P. J.

WE CONCUR:

BUCHANAN, J.

RUBIN, J.

6